[Civ. No. 10691. Second Appellate District, Division One.—June 30, 1936.]

F. J. KLINDERA, Respondent, v. GEORGINA SMITH, as Administratrix, etc., Defendant; BARBARA MIKUSKA, Appellant.

116

John F. Balaam and W. Reginald Jones for Appellant.

George DeLany Blair for Respondent.

SHINN, J., *pro tem.*—Action to recover money by one claiming to be the donee thereof. Plaintiff and intervener, Barbara Mikuska, are respectively the surviving brother and sister of Mike Klindera, deceased, of whose estate Georgina Smith, a daughter of plaintiff, is administratrix with will annexed. Mike Klindera in July, 1934, was a patient in a hospital in Oakland, where he underwent an operation on July 12th, following which he died on the night of July 14th. He had on deposit at the Citizens National Trust & Savings Bank in Los Angeles the sum of $10,150. On July 11th, plaintiff, at the request of Mike Klindera, telephoned to a

notary public, who came to the hospital, drew a will for Mike, brought it to him the following morning for signature and apparently it was then executed. After the notary left, Mike said: "Frank, there is a bag over there; hand that to me", which Frank did. According to the latter's testimony, the following occurred: "After I handed the bag over to him, he says, 'Open it.' I did so, and he took out several—well, some stock—Durant stock, something of that sort; three or four. He says, 'These are worthless.' He says, 'Hand me that savings deposit bank book,' which I done. He handed it back to me and says, 'This is yours, and this will about make us even.' I took the book, looked at it, and I says to him, 'Mike, I guess you will be all right.' 'No', he says, 'Take it.' I took the book, and went to the bank and— . . . He told me to be sure and tend to it." Plaintiff went to an Oakland bank with the pass book, where he was given a draft on the Los Angeles bank and a signature card for the signatures of his brother Mike and himself, which plaintiff testified were signed by both on July 12th. On July 14th there were delivered to the Oakland bank the draft signed by Mike Klindera, the signature card, and the pass book of the Los Angeles bank. The draft and pass book were forwarded to the Los Angeles bank and the Oakland bank issued a savings bank pass book to "Mr. Klindera or F. J. Klindera", showing a deposit on that day of $10,000, an additional amount of $150 interest being entered at a later date upon payment of the draft for $10,150 by the Los Angeles bank. The signature card read in part as follows: "(2) That all funds now to the credit of or which may hereafter be placed to the credit of this account are and shall be the property of the undersigned as Joint Tenants to be withdrawn as follows: Upon the signature of either of us or our survivors." Plaintiff claims, and the court found, that Mike Klindera on July 12, 1934, made a gift of the money in the bank to plaintiff, and that on July 14, 1934, plaintiff and Mike Klindera opened said joint savings account with the Oakland bank and that the bank gave credit to such joint savings account on July 14, 1934.

Appellant, Barbara Mikuska, challenges the sufficiency of the evidence to support these findings.

The acts of the donor, as testified to by plaintiff, if done with the intention of making a gift of the money on

deposit in bank, were sufficient to constitute a valid gift. (*Dellepiane* v. *Hynes,* 83 Cal. App. 604 [257 Pac. 180].) The conclusion of the court that such intention existed is questioned because of the statement of Mike Klindera to plaintiff to "be sure and tend to it" made shortly after the pass book was handed to plaintiff and because of plaintiff's actions in having the draft signed by Mike Klindera and depositing the same to the joint account of himself and Mike Klindera. It is also claimed that plaintiff made a statement to the effect that the papers were executed for the purpose of enabling plaintiff to see that the doctor and the nurse were paid promptly, and the witness Bertha R. Jensen so testified. While the statement of Mike Klindera is consistent with the idea that he had expressed a wish that something further be done in connection with the transfer of the funds in bank, it is not inconsistent with the theory of a gift, because the statement may have amounted to nothing more than a request that plaintiff see to it that the account was transferred into plaintiff's name. The purely circumstantial evidence tended to show that there was an understanding that a joint account was to be created, and the testimony given by the witness Jensen is consistent with this view, but this was only one inference that might have been drawn from the evidence as a whole. The trial court was justified in finding, as it evidently did, that the joint account was voluntarily opened by plaintiff after the gift had been effected. We cannot say that the evidence was insufficient to support the finding of the court that a valid gift of the money was effected. Manual delivery of the pass book, accompanied by words of donation, sufficiently support the finding. The trial court was required to determine as an essential fact in the case the intention with which the pass book was delivered to plaintiff. The inferences drawn by the court from the statements and acts of the parties, especially those of Mike Klindera, were reasonable and logical and cannot be disturbed.

Appellant's next point is that no joint account was created by the deposit of the draft and the issuance of the pass book showing the account credited with the amount of the draft. She relies upon the testimony of the branch manager of the Oakland bank to the effect that the bank would not have allowed the withdrawal of any money from

the account prior to July 16, 1934, when the draft was honored by the Los Angeles bank. For this reason it is contended that the joint account did not come into being until the draft was paid, which was after the death of Mike Klindera. No authority is cited which supports this contention. The bank accepted the draft for deposit and not for collection, and having done so, and having issued the pass book and credited the account with the amount of the draft, the transaction was complete. The intention of the bank not to honor withdrawals until the draft was collected did not retract from the effectiveness of the acts of the depositors, who had done all that they were required to do or could do at the time to create a joint tenancy in the account. Their acts were sufficient to create a joint tenancy. (*Estate of McCoin,* 9 Cal. App. (2d) 480 [50 Pac. (2d) 114].) ▆ Moreover, if a joint tenancy had not been created, title to the money still would have remained in plaintiff as donee thereof, and in either event he had a right to receive it.

The amended complaint of the intervener sought the invalidation of the transaction between the brothers upon grounds of fraud and undue influence. The findings upon these issues were in favor of plaintiff. After reading all of the testimony we are satisfied that there was no substantial evidence in the case supporting either the charge of undue influence or that of fraud.

The judgment is affirmed.

Houser, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 27, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 27, 1936.